**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
**AUGUSTO CHUCHUCA,**

                    **Plaintiff,**

       -against-

                                  **MEMORANDUM**

**CREATIVE CUSTOMS CABINETS INC.,**           **AND ORDER**
*doing business as* Royal Contracting & Design Corp.,
**ROYAL CONTRACTING & DESIGN CORP.,**     **13-CV-2506 (RLM)**
**NEXHMI PREBREZA,** *also known as*
Nino Prebreza, **FLAMUR PREBREZA,**
*also known as* Flag Prebreza**,**

                    **Defendants.**
------------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

     In April 2013, plaintiff Augusto Chuchuca ("plaintiff") filed this wage-and-hour action

against four defendants, alleging that they had failed to properly compensate him for his work,

in violation of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"),

and New York common law. <u>See</u> Complaint (Apr. 25, 2013) ("Compl."), Electronic Case

Filing ("ECF") Docket Entry ("DE") #1. Following initial settlement discussions, the parties

consented to have the case handled by a magistrate judge for all purposes. <u>See</u> Consent to

Jurisdiction (Jan. 9, 2014) ("Consent"), DE #21. Ultimately, however, settlement discussions

broke down, and none of the defendants responded to the complaint.

     Plaintiff thereafter moved for a default judgment against defendants Creative Custom

Cabinets, Inc. ("Creative"),[1] Royal Contracting & Design Corp. ("Royal"), and Nexhmi Prebreza, a/k/a Nino Prebreza ("Prebreza") (collectively, "defendants").[2] See Mot. for Default. The following month, the Court held an evidentiary hearing on the motion. See Minute Entry (June 20, 2014), DE #39.

For the reasons that follow, the Court grants in part and denies in part plaintiff's motion for default judgment. Plaintiff has established liability under the FLSA and the NYLL with respect to unpaid overtime premiums, but not as to minimum wage violations. The Court further concludes that the complaint does not sufficiently allege a claim for unpaid spread-of-hours compensation under the NYLL, but does sufficiently allege a breach of contract claim for unpaid wages under New York common law. As for damages, the Court finds that Prebreza and Creative are jointly and severally liable for $66,205.50 in damages — $52,775.50 of which is subject to prejudgment interest as of April 25, 2010. The Court concludes that Prebreza and Royal are jointly and severally liable for $1,000 in damages, the entirety of which is subject to prejudgment interest of as May 1, 2012.

Finally, the Court expresses its displeasure with the quality of the advocacy afforded by the Law Offices of William Cafaro, and, in particular, its failure to properly supervise an inexperienced junior associate, Amit Kumar ("Kumar").

---

[1] In the complaint, defendant Creative is alleged to be doing business as Royal Contracting & Design Corp., which is also separately named as a defendant. See Compl. ¶ 3; but see discussion infra pp. 15-17.

[2] Plaintiff initially moved for default judgment against the fourth defendant named in the complaint, Flamur Prebreza, a/k/a Flag Prebreza ("Flamur Prebreza"). See generally Compl.; Motion for Default Judgment (May 2, 2014) ("Mot. for Default"), DE #34. However, plaintiff later withdrew his motion as to Flamur Prebreza. See Transcript (June 20, 2014) ("6/20/14 Tr.") at 33-35, DE #40. In connection with the procedural history of the case prior to June 20, 2014, references in this opinion to "defendants" include Flamur Prebreza.

## FACTUAL BACKGROUND

As an initial matter, inconsistences abound among the allegations in plaintiff's complaint, statements in his affidavit, and his testimony at the evidentiary hearing. Nevertheless, the following facts may be gleaned from the record.

## I.     Plaintiff's Allegations

Defendant Creative, a cabinet manufacturer located in Brooklyn, New York, employed plaintiff as a cabinet maker from 2006 through approximately March 15, 2012. See Compl. ¶¶ 2, 25, 27. In April 2012, following his employment with Creative, plaintiff began working in the same capacity for defendant Royal in Queens. See 6/20/14 Tr. at 24. Plaintiff's employment with Royal ceased in or around May 2012. See id. Defendant Prebreza served as the principal, officer and/or manager of both Creative and Royal. See Compl. ¶ 5.

The complaint alleges that, while he was employed with Creative and Royal, plaintiff's agreed-upon hourly rate was $20 and that he "usually" worked six days per week, from 8 a.m. to 7 p.m. See Compl. ¶¶ 28-29.[3] The pleading further alleges that, although plaintiff "regularly worked . . . in excess of forty (40) hours per week," he "never received any overtime premium for work performed in excess of the forty hour work week." See id. ¶ 30. According to the complaint, defendants "frequently allowed [p]laintiff's wages to become delinquent, and as such delinquencies accumulated, [d]efendants would pay them down from time to time, and they would accumulate again." See id. ¶ 31.

Plaintiff avers that his work for defendants is covered by the FLSA, the NYLL and

---

[3] In fact, evidence adduced at the hearing established that plaintiff's agreed-upon rate did not reach the $20 level until 2008. See *infra* p. 27.

New York common law.  See Compl. ¶¶ 36-48.  Furthermore, plaintiff claims that defendants violated the FLSA "knowingly" and "willfully," id. ¶¶ 38, 42, and violated the NYLL "in bad faith," id. ¶¶ 40, 44, 46.  Plaintiff also alleges that Creative and Royal constituted a "joint enterprise," see id. ¶ 16, and that, during all relevant times while performing his duties as a cabinet maker for Creative and Royal, he worked "at the direction and under the control of" Prebreza, who "controlled the terms and conditions of employment, supervised employees, [and] made decisions as to hiring and firing and as to wages . . . ," id. ¶¶ 32, 34.

## II.  Procedural History

### A.  The Initiation of the Case and Defendants' Failure to Respond to the Complaint

Plaintiff commenced this action in April 2013.  See generally Compl.  Summonses were issued, and defendants were properly served on May 31, 2013.  See Affidavits of Service (June 10, 2013), DE #4-DE #8.  On July 2, 2013, defendants moved for, and were granted, an extension of time to respond to the complaint.  See Endorsed Order (July 3, 2013), DE #9. Thereafter, defense counsel requested additional extensions of time to answer or otherwise respond, which the Court granted.  See Endorsed Order (July 19, 2013), DE #11; Endorsed Order (Aug. 23, 2013), DE #13; Endorsed Order (Sept. 9, 2013), DE #15.  On September 20, 2013, the parties requested yet another extension of time for defendants to answer the complaint, as "[s]ettlement appears close[.]"  See Endorsed Order (Sept. 20, 2013), DE #18. The Court extended defendants' time to respond until September 27, 2013.  See id.

Defendants failed to respond by the Court's deadline.  On December 10, 2013, plaintiff requested a certificate of default against all defendants, but, within a month, plaintiff sought to

hold that request in abeyance, as the parties were "currently in the middle of settlement negotiations[.]" See Status Letter (Jan. 9, 2014), DE #21. That same day, the parties filed an executed consent form, pursuant to 28 U.S.C. § 636(c), authorizing the undersigned magistrate judge to handle the case for all purposes. See Consent.

Eventually, settlement negotiations broke down, and defense counsel moved to withdraw as defendants' attorney. See Endorsed Order (Feb. 3, 2014), DE #25; Motion to Withdraw (Feb. 11, 2014), DE #26. The Court directed defendants to show cause why their attorney's application to withdraw should not be granted and, in addition, ordered them to respond to the complaint by March 14, 2014. See Endorsed Order (Feb. 13, 2014), DE #28. On April 21, 2014, after defendants ignored the Court's order to show cause[4] and failed to respond to the complaint, the Clerk of the Court entered a notation of default. See Clerk's Entry of Default (Apr. 21, 2014), DE #32.

## B. Plaintiff's Motion for Default Judgment

Thereafter, plaintiff moved for default judgment against all defendants named in the complaint. See Mot. for Default. As part of plaintiff's motion, plaintiff's counsel submitted, *inter alia*, an affidavit of plaintiff (hereinafter, the "Chuchuca Affidavit"), as well as a chart summarizing the categories and amounts of damages plaintiff claimed to have suffered as a result of defendants' conduct (hereinafter, the "Motion Damages Chart"). See Affidavit of Augusto Chuchuca (Apr. 25, 2014) ("Chuchuca Aff."), DE #36-6; Damages Chart (May 2, 2014) ("5/2/14 Damages Chart"), DE #36-7. Defendants never responded to plaintiff's

---

[4] The Court ultimately granted defense counsel's application to withdraw. See Memorandum and Order (Feb. 26, 2014), DE #29.

motion, despite the Court's direction that they do so.  See Order (Apr. 21, 2014), DE #33.

The Court's review of plaintiff's motion papers raised concerns about the reliability of the Chuchuca Affidavit and the Motion Damages Chart.  For example, although plaintiff alleged that defendants never issued him a W-2, plaintiff claimed, based on his "recollections," that from 2006 until March 15, 2012, "the [d]efendants only paid [him] $67,030.00."  See Chuchuca Aff. ¶ 13.  The Court wondered how plaintiff, who failed to proffer any checks or other documentation to support that figure, was able to recall such a precise sum for work performed over so lengthy a period of time.  See Order (June 9, 2014) at 1-2, DE #37. Moreover, the Motion Damages Chart presumed that plaintiff worked 52 weeks per year during the entire period of his employment, and plaintiff's affidavit failed to address whether and when plaintiff had taken time off for vacation or for medical reasons.  See id. at 2. Therefore, the Court scheduled a damages inquest hearing to explore those issues and directed that, prior to the hearing, plaintiff provide the Court with "copies of all documents relevant to the number of days worked or not worked by plaintiff (including travel records, etc.) and the amount of money paid by defendants."  See id.

**C.  Plaintiff's Supplemental Submissions and the Evidentiary Hearing**

In accordance with the Court's directive, plaintiff submitted several documents: (1) a complaint plaintiff had filed with the New York State Department of Labor in December 2012 ("NYSDOL Complaint"); (2) a spreadsheet purporting to list the hours plaintiff worked, the payments made by defendants and the payments owed to plaintiff for the period from January 1, 2010 through May 31, 2012, DE #38-3 (the "Hours Spreadsheet"); and (3) copies of select

time cards, DE #38-4 (the "Time Cards").  See Letter (June 19, 2014) ("6/19/14 Let."), DE

#38, and accompanying attachments.  None of those documents had been submitted in support

of plaintiff's motion for default judgment or otherwise previously presented to the Court.

Instead of alleviating the Court's concerns regarding the accuracy of plaintiff's claimed

damages, plaintiff's submissions served to heighten those concerns.  For example, the

NYSDOL Complaint, prepared in December 2012, stated that plaintiff worked 72 hours per

week.  See NYSDOL Complaint, DE #38-1 at 3.  A few months later, in April 2013, plaintiff

filed this action, alleging that plaintiff worked 66 hours per week.  See Compl. ¶ 28.  In May

2014, as part of his default motion, plaintiff submitted the Motion Damages Chart, which

assumed that plaintiff worked 63 hours per week.  See 5/2/14 Damages Chart.  And then in

June 2014, prior to the evidentiary hearing, plaintiff's counsel conceded that plaintiff's own

records (i.e., the Time Cards and Hours Spreadsheet) reflect that plaintiff's hours were

substantially lower — approximately 48 hours per week, according to counsel's calculations.

See 6/19/14 Let. at 2; see infra p. 27 n.13.  Plaintiff's counsel stated that he nevertheless

decided to utilize the 63-hours-per-week assumption after "review[ing] and consider[ing] all of

the available records" and that he deemed the assumption to be "fair and reasonable."  See

6/19/14 Let. at 2.  Apart from vaguely referencing his review of the records, counsel provided

no explanation or mathematical breakdown for how he arrived at the 63-hours-per-week

estimate.  See id.

On June 20, 2014, the Court held an evidentiary hearing on plaintiff's motion for

default judgment.  There, plaintiff testified (through an interpreter) that, while working for

defendants, he had kept track of his hours and pay in the following manner: First, plaintiff would hand-write the hours he worked on a time card; he would then copy the time card information into a computerized spreadsheet (i.e., the Hours Spreadsheet). See 6/20/14 Tr. at 15. Plaintiff would retain the physical time card until defendants paid him for the time reflected in the card. See id. Once defendants paid him in full for a particular time period, he would surrender the physical time card to defendants and delete the hours paid from the Hours Spreadsheet. See id. at 15, 17, 25. Thus, as plaintiff explained, the Hours Spreadsheet in effect showed that, over the course of the period from January 2010 through May 2012, plaintiff was paid $67,030 and was owed $41,560.[5] See id. at 16-17; Hours Spreadsheet (compare "Discharges" column with "Balances" column). For the period prior to January 2010, defendants paid plaintiff for all of his straight-time pay, see 6/20/14 Tr. at 17, 29,[6] but did not pay him the requisite overtime premium for any hour that he worked in excess of 40 hours in any single week, see id. at 29.

At the hearing, plaintiff conceded that the information contained in his Hours Spreadsheet was more accurate than the estimate of hours contained in the NYSDOL Complaint. See id. at 17. More importantly, plaintiff confirmed that he had given the Hours Spreadsheet, Time Cards and NYSDOL Complaint to his attorneys shortly after retaining them. See id. at 18.

At the conclusion of plaintiff's testimony, the Court expressed its frustration with the

---

[5] Although the Hours Spreadsheet and the Complaint both reflect this $41,560 figure, there is a calculation error in the Hours Spreadsheet: plaintiff was actually owed only $40,090. See infra p. 30.

[6] Plaintiff explained that he destroyed his notes relating to the earlier period once he was paid his straight-time pay for that period. See 6/20/14 Tr. at 17.

manner in which plaintiff's counsel had handled the motion for default judgment. See 6/20/14 Tr. at 30 (questioning why Kumar used an estimated number of hours when time records containing actual hours were available); id. at 31 (questioning why plaintiff's Memorandum of Law stated that there were no records to contradict plaintiff's estimates, when counsel was aware of the Hours Spreadsheet and Time Cards). During the Court's colloquy with him, counsel stated that he would be withdrawing plaintiff's common law contract claim, as well as all claims against defendant Flamur Prebreza. See id. at 32-33. He also confirmed that his firm would not be seeking an award of attorney's fees. See id. at 33.

## DISCUSSION

### I.     Default Judgment Standard

If a defendant fails to respond to the complaint and defaults, any well-pleaded factual allegation contained within the complaint, "other than one relating to the amount of damages," is deemed to be admitted. Fed. R. Civ. P. 8(b)(6); see Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc., 702 F.Supp.2d 104, 111 (E.D.N.Y. 2010) ("A defendant's default is an admission of all well-pleaded factual allegations in the complaint except those relating to damages." (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). Nevertheless, a fact is not "'well-pleaded' if it is inconsistent with other allegations of the complaint[,]" In re Indus. Diamonds Antitrust Litig., 119 F. Supp.2d 418, 420 (S.D.N.Y. 2000), or is "contrary to uncontroverted material in the file of the case," Trans World Airlines v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973).

Moreover, a pleading's legal conclusions are not assumed to be true; consequently, on

a motion for a default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief.  See Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465 (RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar. 15, 2012), adopted, 2012 WL 1416901 (E.D.N.Y. Apr. 24, 2012); see also City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (in assessing a plaintiff's entitlement to default judgment, a court is "'required to determine whether the [plaintiff's] allegations establish the [defendant's] liability as a matter of law'") (quoting Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).

Even if liability has been sufficiently alleged, the extent of the damages pleaded by the plaintiff is not deemed to be established by the default; instead, the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA) Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).  This inquiry may be accomplished by evaluating and analyzing affidavits and other documentary evidence submitted by the plaintiff in regards to the level of damages sought.  See Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) (finding that a "court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum [of damages]").  A court may also, in its discretion, conduct a hearing to ascertain the level of damages to be awarded against a defaulting defendant.  See Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991).

## II.   Liability

### A.  The Fair Labor Standards Act – Legal Principles

#### 1.  Employer/Employee Relationship

The Fair Labor Standards Act requires all employers to pay each of their employees wages "not less than" the prevailing minimum wage, 29 U.S.C. § 206(a)(1), and mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess [of 40 hours] at a rate not less than one and one-half times the regular rate at which he is employed," id. § 207(a)(1).  The FLSA defines an employer to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."  29 U.S.C. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to work").  An employee may bring suit against his employer as long as he was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," id. § 207(a)(1), with an annual gross volume of sales of at least $500,000.  29 U.S.C. § 203(s)(1)(A)(ii).  In some circumstances, multiple businesses may constitute a single enterprise under the FLSA for purposes of establishing FLSA "enterprise coverage."  See, e.g., Berrezueta v. Royal Crown Pastry Shop, Inc., No. 12 CV 4380(RML), 2014 WL 3734489, at *4-7 (E.D.N.Y. July 28, 2014).

An employee may simultaneously have multiple "employers" for purposes of determining responsibility under the FLSA.  Indeed, the regulations promulgated by the United States Department of Labor under the FLSA recognize that there may be joint liability for

FLSA violations.  See 29 C.F.R. § 791.2 ("A single individual may stand [as an employee] to two or more employers at the same time under the Fair Labor Standards Act . . . ."); see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003) (collecting cases that permit claims against joint employers under the FLSA).  In order to determine whether an employer-employee relationship exists for FLSA purposes, courts have adopted an "economic realities" test, "grounded in economic reality rather than technical concepts, determined by reference not to isolated factors, but rather upon the circumstances of the whole activity."  Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141 (2d Cir. 2008) (citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961); Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947)) (internal quotations omitted).  Although employment relationships under the FLSA are flexible and must be determined by examining the totality of the circumstances on a case-by-case basis, the Second Circuit has cited four factors of "formal control" that are pertinent to even the most basic employer-employee analysis.  See Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984).  These "formal control" factors are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Id. (internal quotations and citations omitted).  Even in the absence of "formal control," an entity or individual may constitute an "employer" if that party had "functional control" of the employee.  See Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D. 516, 526 (S.D.N.Y. 2013) (citing Zheng, 355 F.3d at 71-72).

In accordance with these principles, "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation . . . ." Moon v. Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (internal quotation and citation omitted). Consequently, joint employers, including corporate officers with the "power to control," may be held jointly and severally liable for FLSA violations. See id. at 236-37 (citations omitted).

### 2. Violations of the FLSA

In order to establish liability under the FLSA for unpaid minimum wages or overtime pay, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)). The FLSA contains a two-year statute of limitations for non-willful violations, and, for willful violations, a three-year limitations period from the date that the claim accrued. See 29 U.S.C. § 255(a). Willfulness requires a showing that the employer either knowingly violated its obligations under the FLSA or showed reckless disregard for whether its conduct was prohibited by that statute. See Gunawan v. Sake Sushi Rest., 897 F.Supp.2d 76, 87 (E.D.N.Y. 2012). Where, as here, the complaint alleges willfulness, and the employer has defaulted, the Court is entitled to find that willfulness has been established. See id.; Hernandez v. P.K.L. Corp., No. 12-CV-2276 (NG)(RML), 2013 WL 5129815, at *2 (E.D.N.Y. Sept. 12, 2013).

**B.  New York Labor Law – Legal Principles**

The New York Labor Law is quite similar to the FLSA in that it requires employers to pay a minimum hourly wage to employees, and mandates an overtime compensation scheme. See N.Y. Lab. Law § 650 *et seq.*; Gunawan, 897 F.Supp.2d at 84 ("The NYLL mirrors the FLSA in most but not all respects.").  Indeed, like the FLSA, for purposes of the NYLL, an employee may have multiple "employers."  See Glatt, 293 F.R.D. at 526 ("Courts use the same tests to determine joint employment under both the NYLL and the FLSA.") (citations omitted).  One area in which the NYLL differs from the FLSA is the NYLL's requirement that, in circumstances described hereafter, see *infra* pp. 20-22, an employer must pay employees a "spread-of-hours" premium that is equal to one hour of pay at the statutory minimum wage for each day an employee works in excess of ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4; see also id. §§ 142-2.1 - 2.5 (minimum hourly wage, overtime rate, and allowances).  Another distinction is the limitations period, which, under the NYLL, is six years.  See N.Y. Lab. Law §§ 198(3), 663(3).[7]

---

[7]  Unlike the FLSA, the NYLL contains a provision that requires employers to pay manual workers on a weekly basis promptly after the wages are earned.  See N.Y. Lab. Law § 191(1)(a) (providing, in pertinent part, that a "manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned"); Shin Won Kang v. Inno Asset Dev., LLC, No. 08-CV-4848 (SLT)(JMA), 2011 WL 1674554, at *3 (E.D.N.Y. Jan. 28, 2011), adopted, 2011 WL 1670946 (E.D.N.Y. May 3, 2011); Chun Jie Yin v. Kim, No. 07 CV 1236 (DLI)(JO), 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008).  In his memorandum of law, plaintiff cites that provision in arguing that he is "entitled to receive all earned wages not later than seven days after the end of the week in which the wages are earned."  Plaintiff's Memorandum of Law in Support of Motion for Default Judgment ("Pl. Mem.") at 3, DE #35 (citing N.Y. Lab. Law § 191(1)(a)).  The complaint does not, however, assert a cause of action under section 191(1)(a) of the NYLL.  See generally Compl.; Fed. R.

(continued...)

## C. Application

Having set forth the relevant legal standards under the FLSA and the NYLL, the Court now considers whether the factual allegations asserted in plaintiff's complaint, deemed to be true as a result of defendants' default, are sufficient to warrant a finding of liability against each defendant. See Fed. R. Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137.

### 1. Liability of Prebreza, Creative, and Royal

According to the complaint, plaintiff worked for Creative *and* Royal from 2006 until approximately March 15, 2012, and Prebreza controlled and managed both entities. See Compl. ¶ 26. With respect to Prebreza, the complaint and plaintiff's testimony were consistent: Prebreza controlled the terms and conditions of plaintiff's employment at both Creative and Royal for the entire period at issue. Compare Compl. ¶¶ 33-34 with 6/20/14 Tr. at 25, 27. This is sufficient to find Prebreza was an "employer" of plaintiff at both locations. See, e.g., Peralta v. M &O Iron Works, Inc., 12-CV-3179 (ARR), 2014 WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014).

Although the pleading asserts that plaintiff worked for both Creative and Royal from 2006 until approximately March 15, 2012, see Compl. ¶ 26, plaintiff testified that, contrary to the complaint, he worked for the entities in succession — for the Brooklyn-based Creative from 2006 until either March or April 2012, and, when Creative ceased operating, for the Queens-based Royal from April 2012 until he left a few months later. See 6/20/14 Tr. at 6, 24.

---

[7](…continued)
Civ. P. 54(c).

The complaint suggests that, because "the two locations are operated under common ownership and under common management for joint business purposes," Creative and Royal qualify as a "joint enterprise," see Compl. ¶ 16 -- an apparent reference to the "single enterprise" theory of FLSA coverage. See *supra* p. 11; Berrezueta, 2014 WL 3734489, at * 4 ("Courts use a three-part test to determine when an entity is [part of a single] enterprise: (1) the entity or entities must engage in related activities, (2) performed through unified operation or common control, (3) for a common business purpose.'") (internal quotation and citation omitted). Plaintiff's "joint enterprise" theory thus seems to confuse the concepts of "single enterprise" and "joint employer." See *supra* pp. 11-12. Indeed, at the evidentiary hearing, plaintiff's counsel sought to have Creative and Royal held liable as joint employers. See 6/20/14 Tr. at 33. Plaintiff's memorandum of law in support of default judgment provides no clarity on this issue, as it offers no case law or argument to support holding the two entities jointly liable. See generally Pl. Mem.

Based on plaintiff's counsel's representation at the hearing, the Court will generously construe the complaint's "joint enterprise" allegation to be an inartful attempt to plead that Royal and Creative were joint employers. "[J]oint employment arises when the employee 'performs work which *simultaneously* benefits two or more employers' and 'one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee.'" Ansoumana v. Gristede's Operating Corp., 255 F.Supp.2d 184 (S.D.N.Y. 2003) (quoting 29 C.F.R. § 791.2(b)) (emphasis added); accord Javier v. Beck, No. 13CV2926, 2014 WL 3058456, at *4 (S.D.N.Y. July 3, 2014).

Plaintiff's own testimony established that he was not employed by both Creative and Royal at the same time, and the pleading's allegations to the contrary need not be deemed admitted in light thereof. See Trans World Airlines, 449 F.2d at 63. Moreover, save for common ownership and management by Prebreza, the complaint alleges no facts to support a reasonable inference that plaintiff's work for one entity benefitted the other. Nor were any facts alleged in the complaint or adduced at the hearing to suggest that Royal somehow controlled plaintiff's employment conditions while he worked at Creative, or vice versa. Therefore, plaintiff has failed to establish that Creative and Royal were joint employers for purposes of the FLSA and the NYLL. Cf. Moon, 248 F.Supp.2d at 237 (multiple entities were "joint employers" of maintenance man, where, among other things, they "essentially treat[ed] him as a shared employee," accommodated his work assignments between entities, and otherwise "clearly shared control" over his employment activities). Thus, to the extent the Court finds liability and awards damages for the time period from April 25, 2007 through March 31, 2012, it will impose such damages jointly and severally on Creative and Prebreza; for any liability and damages from April 2012 through May 31, 2012, Royal and Prebreza will be held jointly and severally responsible.[8]

---

[8] Although the complaint and plaintiff's affidavit allege that he was employed by the "defendants" through approximately March 15, 2012, see Compl. ¶ 26; Chuchuca Aff. ¶ 6, plaintiff testified that he worked for Royal for "three or four months" starting in April 2012. See 6/20/14 Tr. at 24. Plaintiff's NYSDOL Complaint only adds to the confusion. See NYSDOL Complaint at 2 (plaintiff's period of employment was through March 2, 2012) with id. (plaintiff's pay rate was $20 per hour until December 6, 2012). In his motion for default judgment, plaintiff seeks to recover for unpaid wages until June 6, 2012. See 5/2/14 Damages Chart. But the Hours Spreadsheet shows that plaintiff did not work any hours in June 2012 --
(continued...)

## 2. Overtime

Plaintiff has sufficiently alleged claims against defendants for unpaid overtime under the FLSA[9] and the NYLL. The complaint avers that plaintiff worked six days per week for eleven hours per day, and, despite regularly working in excess of forty hours per week, he "never received any overtime premium for work performed in excess of forty hours." Compl. ¶¶ 28, 30.

## 3. Minimum Wage

Plaintiff's complaint fails to adequately state a claim for unpaid minimum wages. Plaintiff has alleged that his hourly rate was $20 — significantly higher than the relevant

---

[8](…continued)
rather, it indicates that June 6, 2012 was the date of the final payment to plaintiff; the last time plaintiff worked was in May 2012. See Hours Spreadsheet; but see Chuchuca Aff. ¶ 6 (averring in support of default judgment that plaintiff worked for "defendants" until March 15, 2012). (Plaintiff did not produce any Time Cards for the period he worked at Royal.)

The Court is satisfied that plaintiff's employment under Prebreza and Royal continued through May 31, 2012 for purposes of this default judgment motion, given the fact that the March 15, 2012 date in the complaint was an approximation and only a few months shy of the end date indicated in the Hours Spreadsheet. Moreover, Prebreza and Royal were on notice that plaintiff sought damages for his unpaid wages while employed at Royal and the additional months do not otherwise alter the type of claims in this case. Cf. Hosking v. New World Mortg., Inc., No. 07-CV-2200 (MKB), 2013 WL 5132983, at *5-6 (E.D.N.Y. Sept. 12, 2013) (plaintiff could not allege minimum wage claim after moving for default judgment on complaint that asserted only an overtime claim, as that would violate Rule 54(c) of the Federal Rules of Civil Procedure); Fed. R. Civ. P. 54(c) (default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings").

[9]   The uncontroverted allegations in the complaint establish enterprise coverage under FLSA. See Compl. ¶ 24 (plaintiff regularly handled products that had been moved in interstate commerce); id. ¶¶ 8-15 (during relevant years, Creative and Royal had gross receipts of not less than $500,000).

federal and state minimum wage requirements during the time period asserted in the complaint. See Compl. ¶ 29; discussion *infra* p. 27. And while the pleading alleges, in conclusory fashion, that he was not paid overtime, see Compl. ¶ 30, it makes no similar assertion with respect to minimum wages, see id. ¶¶ 23-35.

To be sure, once the Court received plaintiff's motion for default judgment and the accompanying papers, it appeared that plaintiff's "minimum wage" theory might be based on the fact that defendants fell behind in making adequate and timely payments to plaintiff. See Pl. Mem. at 3 ("Plaintiff did not receive any wages at all during much of his employment."); Chuchuca Aff. ¶ 13 (during the time period alleged in the complaint, defendants paid plaintiff only $67,030); but see Pl. Mem. at 2 (arguing that plaintiff is entitled to damages for "non-payment of wages" but silent as to damages for *minimum* wages). Nevertheless, while the complaint briefly alludes to defendants' delinquencies, see Compl. ¶ 31, the pleading contains no relevant factual information to put those delinquencies in context — i.e., nothing suggests that the delinquencies were so severe as to render plaintiff's regular rate of pay below the minimum wage. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); cf. Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 115 (2d Cir. 2013) (although Second Circuit concluded that plaintiff's work shifts, as pled, could theoretically mean she worked in excess of 40 hours per week at some point, the panel found "her allegations suppl[ied] nothing but low-octane fuel for speculation" and affirmed dismissal of her FLSA overtime claims).

Indeed, calculating plaintiff's regular hourly rate based on the few facts asserted in the complaint leads to the conclusion that, at least as alleged, plaintiff was paid in excess of the minimum-wage rate, even when accounting for the delinquencies.[10]

Therefore, plaintiff has not properly pled that defendants paid him less than the minimum wage under the FLSA or the NYLL, and he is not entitled to recover on those claims.

### 4. Spread of Hours

With respect to spread of hours, plaintiff has alleged that he worked more than ten hours per day, see id. ¶ 28, and that he did not receive spread-of-hours compensation for any work in excess of ten hours per day. See id. ¶ 46. However, because plaintiff's allegations do

---

[10] For minimum-wage recovery under the FLSA, the pertinent question is whether "the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage." Gordon v. Kaleida Health, 847 F.Supp.2d 479, 490 (W.D.N.Y. 2012); see also Lundy, 711 F.3d at 116 ("So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week."). In terms of compensation, all that is pled in the complaint, in connection with plaintiff's common law claim for breach of contract, is that defendants owe plaintiff at least $41,560. See Compl. ¶ 48. Extrapolating based on the hours worked as alleged in the complaint (i.e., 66 hours per week), plaintiff worked approximately 16,764 hours from April 25, 2007 until March 15, 2012. Multiplying that figure by his $20 hourly rate, plaintiff should have received $335,280 in total straight-time compensation over the course of his employment. If, as alleged in the complaint, plaintiff is owed $41,560 of the $335,280 earned, then plaintiff was paid approximately $293,720, which, when divided by the 16,764 hours worked, yields an effective hourly straight-time rate of approximately $17.52 — still significantly higher than the federal or state minimum wage. And looking solely to the Hours Spreadsheet, plaintiff worked 5,406 hours from January 1, 2010 through May 31, 2012, entitling plaintiff to $108,120 in straight-time wages. The Hours Spreadsheet further states that plaintiff was owed $41,560. This means, according to that sheet, that plaintiff was paid $66,560, which, when divided by the total hours worked (i.e., 5,406), yields a straight-time hourly rate of $12.31. During this period, the federal and state minimum wage hourly rate was $7.25.

not support a minimum-wage claim, this Court concludes that he is not entitled to spread-of-hours compensation.

The relevant regulation of the New York State Department of Labor ("NYSDOL") provides, in pertinent part, that, "in addition to the minimum wage," if an employee works in excess of 10 hours in a day, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4. In accordance with the clear weight of authority in this Circuit, as well as all precedent in this District ruling on the issue, employees who earn in excess of the minimum wage are not entitled to a spread-of-hours compensation. See, e.g., Carrasco-Flores v. Comprehensive Health Care & Rehab. Srvs., LLC, No. 12-CV-5737 (ILG) (JMA), 2014 WL 4954629, at *5 (E.D.N.Y. Oct. 2, 2014) (based on the plain language of the spread-of-hours statute, only employees making minimum wage are entitled to spread-of-hours payment); Guadalupe v. Tri-State Emp't Mgmt. & Consulting, Inc., No. 10-CV-3840 (NG) (CLP), 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug. 28, 2013) (holding that, in deference to NYSDOL opinion letters, employees making in excess of minimum wage are not entitled to spread-of-hours payments); Ellis v. Common Wealth Worldwide Chauffeured Transp. of N.Y., LLC, No. 10-CV-1741 (DLI) (JO), 2012 WL 1004848, at *7-8 (E.D.N.Y. Mar. 23, 2012); Sosnowy v. A. Perri Farms, Inc., 764 F.Supp.2d 457, 473-74 (E.D.N.Y. 2011); but see Doo Nam Yang v. ACBL Corp., 427 F.Supp.2d 327, 339-340 (S.D.N.Y. 2005).

As explained above, the complaint alleges that plaintiff's agreed-upon rate of pay was $20 per hour, almost three times the applicable federal and state minimum hourly wage during

the relevant time period. The complaint contains no other facts to suggest that, even taking into account defendants' failure to pay for all hours worked, plaintiff's actual rate of pay fell below the minimum wage. See *supra* p. 20 n.10. Therefore, as this Court opts to apply the majority view within this Circuit, plaintiff is not entitled to recover spread-of-hours compensation.[11]

### 5. New York Common Law Contract Claim

The complaint alleges that defendants' failure to pay plaintiff his regular wages constitutes a breach of contract under New York common law. See Compl. ¶¶ 47-48. In moving for default judgment, however, plaintiff took inconsistent positions (even within the same submission) with respect to whether he was pursuing default judgment on that particular claim. Compare Affirmation of Amit Kumar ("Kumar Aff.") ¶ 5, DE #36 (plaintiff is not seeking relief on his common law contract claim as it would be "duplicative" of the FLSA and NYLL claims), with id. ¶¶ 16, 18 (plaintiff is owed damages for his "substantive contract law" claim); see also 5/2/14 Damages Chart (requesting $8,160 in damages under New York contract law); Pl. Mem. at 1 (stating in preliminary statement that plaintiff is entitled to recover under the "substantive contract law of the state of New York," but offering no argument or case law in support thereof). At the evidentiary hearing, counsel confirmed that

---

[11]  Relying on several NYSDOL opinion letters, some courts have held that the relevant inquiry in determining entitlement to spread of hours is not whether the employee has been paid the minimum wage, but whether the employee's "wages are less than the sum of the minimum wages due to the employee *and* an additional hour of minimum wage compensation." See Carrasco-Flores, 2014 WL 4954629, at *5 n.5 (collecting cases) (emphasis added). Even under this interpretation, however, plaintiff would not be entitled to receive spread-of-hours compensation. See *supra* p. 20 n.10.

he was not seeking default judgment on the common law contract claim, and that he had erred in requesting damages thereunder in the Motion Damages Chart. See 6/20/14 Tr. at 32.

Although counsel orally withdrew the contract claim, his affirmation in support of default judgment states that plaintiff "reserves the right to pursue this theory if the default judgment to be entered [as to plaintiff's minimum-wage and overtime claims] is vacated." See Kumar Aff. ¶ 5. The Court generously construes this assertion to mean that plaintiff wishes to maintain his common law contract claim as an alternative theory, in the event the Court denies his claims under the FLSA or NYLL. Because the Court concludes that plaintiff's complaint does not sufficiently allege a minimum-wage violation under either the FLSA or NYLL, it will consider plaintiff's alternative theory that defendants' failure to pay him his wages constituted a breach of contract. Cf. Lundy, 711 F.3d at 116 (recognizing that the FLSA does not create "a federal remedy for all wage disputes," and that for non-minimum-wage and non-overtime claims,"there seems to be no lack of a state remedy, including a basic contract action.").

In New York, the "essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." Canzona v. Atanasio, 989 N.Y.S.2d 44, 47 (2d Dep't 2014) (internal quotation and citations omitted); JP Morgan Chase v. J.H. Elec. of N.Y., Inc., 893 N.Y.S.2d 237, 239 (2d Dep't 2010). "Generally, a party alleging a breach of contract must demonstrate the existence of a contract reflecting the terms and conditions of their purported agreement." Canzona, 989 N.Y.S.2d at 47 (internal quotation and citations omitted).

Although not articulated with any particular skill, plaintiff's complaint contains sufficient factual allegations for this Court to reasonably infer a common law claim for breach of an oral contract under New York law: plaintiff performed — i.e., he worked six days per week — for an "agreed upon rate of pay" of $20 per hour, and defendants ultimately failed to pay him at least $41,560 of his promised wages.  See Compl. ¶¶ 28-31, 48; Berrezueta v. Royal Crown Pastry Shop, Inc., No. 12-CV-4380 (FB)(RML), 2013 WL 6579799, at *7 (E.D.N.Y. Dec. 16, 2013) (plaintiff-employee was entitled to default judgment for claim for breach of oral at-will employment contract, where he alleged that he agreed to provide services to defendants "pursuant to an oral contract, which defendants breached by willfully failing to pay him the agreed-upon amount").

Thus, plaintiff has established liability solely for claims of overtime under the FLSA and the NYLL and breach of contract under New York common law.

## III.    Damages

Although the Court must accept as true the well-pleaded, uncontroverted allegations contained within plaintiff's complaint as to defendants' liability, it need not give the same deference to plaintiff's allegations regarding damages.  See supra p. 10.  Instead, the Court must perform an inquiry to determine the extent of damages to a "reasonable certainty," see Credit Lyonnais Secs., 183 F.3d at 155, by evaluating and analyzing affidavits and other documentary evidence submitted by plaintiff, see Fustok, 873 F.2d at 40, as well as plaintiff's own testimony.

Under both the FLSA and the NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him."  Rodriguez v. Queens Convenience Deli

-24-

Corp., No. 09-cv-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citing Wicaksono v. XYZ 48 Corp., No. 10-cv-3635 (LAK) (JCF), 2011 WL 2022644, at *2 (S.D.N.Y. May 2, 2011), adopted, 2011 WL 2038973 (S.D.N.Y. May 24, 2011)).  Where, as here, defendants, having defaulted, failed to produce the requisite records, "a plaintiff may meet his or her burden of establishing how many hours he or she worked 'by relying solely on his or her recollection.'" Rodriguez, 2011 WL 4962397, at *2 (quoting Rivera v. Ndola Pharm. Corp., 497 F.Supp.2d 381, 388 (E.D.N.Y. 2007) (citing Doo Nam Yang, 427 F.Supp.2d at 335)).

As defendants in this case have defaulted, the Court may rely on plaintiff's recollection of hours and pay in conducting its inquest.  Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate.  See Jemine v. Dennis, 901 F.Supp.2d 365, 376-77 (E.D.N.Y. 2012).

## A. Plaintiff's "Recollection" and Other Evidentiary Submissions

Before proceeding to the damages sought for each claim asserted, the Court must address threshold issues concerning the number of hours plaintiff worked per week and plaintiff's hourly rate of pay.

### 1. Hours Worked Per Week

In his motion, plaintiff seeks to recover damages based on an estimate that he worked 63 hours per week throughout the entire time period at issue in this matter.  See Chuchuca Aff. ¶ 9; Kumar Aff. ¶ 13; see generally 5/2/14 Damages Chart.  Plaintiff's counsel conceded that this figure was not based on plaintiff's recollection per se, but was merely counsel's best attempt at a "fair and reasonable" assumption.  See 6/19/14 Let. at 2.  At the hearing, the

Court questioned the reasonableness of relying on counsel's assumption, which is belied by plaintiff's own records. See 6/20/14 Tr. at 28. Counsel had no explanation, other than to argue that the records provided to the Department of Labor were undated and that to extrapolate from the actual hours recorded in the time records would be "unfair" to plaintff. See id. at 28-30.

The case law is clear that, in the absence of the employer's time records stating otherwise, a plaintiff may establish the hours he or she worked based on recollection alone. But the 63-hour-per-week estimate does not arise out of *plaintiff's recollection;* rather, it was crafted by plaintiff's counsel, seemingly out of thin air. See 6/19/14 Let. at 2. The Court rejects counsel's decision to proceed with the motion for default judgment using this estimate, rather than one extrapolated from the actual time records -- the Hours Spreadsheet and the Time Cards -- which are more reliable indicia of the hours worked by plaintiff. See Trans World Airlines, 449 F.2d at 63.

For the time period reflected in the Hours Spreadsheet (i.e., January 1, 2010 through May 2012), the Court will use the actual hours contained therein to calculate plaintiff's damages. In the absence of evidence in the record indicating a material change over time in plaintiff's hours while working at Creative,[12] it is reasonable to assume that, for the prior period at Creative (that is, from April 25, 2007 through December 31, 2009), plaintiff worked similar hours. Therefore, the Court's calculations for the prior period will use the weekly

---

[12] As discussed later in this opinion, see *infra* pp. 29-30, the Hours Spreadsheet reflects that plaintiff's hours dramatically decreased when Creative ceased operating and he began to work at Royal.

average of 49 hours, extrapolated from the entries in the Hours Spreadsheet through March

2012, when plaintiff ceased working at Creative.[13]

### 2. Hourly Rate

Plaintiff's complaint alleges that, during his employment, his agreed-upon hourly rate

was $20.  See Compl. ¶ 29.  His motion for default judgment assumed an hourly rate of $20

for the entire period of damages.  See generally 5/2/14 Damages Chart.  However, plaintiff's

testimony and records establish that he was paid $16.50 per hour until late 2008, when his

hourly rate was increased to $20 per hour.  See 6/20/14 Tr. at 21; NYSDOL Complaint at 2

(claiming he was paid $16.50 per hour from December 18, 2006 through December 18, 2008);

see also 6/20/14 Tr. at 31 (counsel concedes he erred in utilizing $20 hourly rate for plaintiff's

entire employment history).  Therefore, for the purpose of calculating damages, the Court

assumes plaintiff earned $16.50 per hour until December 18, 2008.  From December 19, 2008

on, the Court assumes he earned $20 per hour.  See Trans World Airlines, 449 F.2d at 63 (on

default judgment, court need not consider a pleading allegation to be true if it is contradicted

by indisputable materials in the record).

### B. Overtime Compensation

Defendants are liable to plaintiff for unpaid overtime wages under the FLSA and the

NYLL.  See 29 U.S.C. § 207(a)(1) (mandating that an employee who works in excess of forty

---

[13]  Plaintiff's counsel asserts, without elaboration, that the Hours Spreadsheet reflects approximately 48 hours per week worked by plaintiff.  See 6/19/14 Let. at 2.  By the Court's own calculation based on the Hours Spreadsheet, plaintiff worked an average of 49 hours per week through March 2012.  The Court's calculation incorporates plaintiff's own assumption that there are only four weeks per month.  See Damages Chart Based on Records (June 19, 2014) ("6/19/14 Damages Chart"), DE #38-5 (dividing monthly total of hours by four weeks).

hours per week must be paid for the excess hours at a premium overtime rate); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (same). This overtime rate adds a 50-percent premium to the employee's regularly hourly rate. See 29 C.F.R. § 778.110(a) ("For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate . . . ."). Plaintiff's claim for willful FLSA overtime violations began to accrue on April 25, 2010, three years prior to the commencement of this lawsuit. By contrast, plaintiff's claim for overtime under the NYLL began to accrue on April 25, 2007, six years prior to the filing of this lawsuit.

The first overtime period under the NYLL runs from April 25, 2007 through December 18, 2008, when plaintiff's regular rate of pay was $16.50. The amount due to plaintiff in unpaid overtime premiums for this period is calculated by multiplying half of his regular rate of pay ($8.25) by 9 hours (the amount of weekly overtime worked by plaintiff), and then multiplying that sum by 86, the number of weeks in this particular time period. The amount owed to plaintiff in unpaid overtime compensation pursuant to the NYLL for this first time period is $6,385.50.

The second period of unpaid NYLL premium overtime runs from December 19, 2008 through April 24, 2010. During this time period, plaintiff's regular rate of pay was $20 per hour. Fifty percent of $20 ($10) is multiplied by the 9 hours of overtime worked per week and

then multiplied by the 70 weeks falling within this particular time period. The amount of unpaid NYLL overtime owed to plaintiff for this second period is $6,300. The total amount of NYLL unpaid overtime compensation owed to plaintiff, taking into account both time periods, is $12,685.50. Because plaintiff was employed for both periods by Creative and Prebreza, they are jointly and severally liable for all unpaid overtime premiums under the NYLL.

The Court next calculates the amount of unpaid overtime compensation that is due to plaintiff pursuant to the FLSA. The FLSA overtime period runs from April 25, 2010 through May 31, 2012 — during which plaintiff's regular rate of pay was $20.[14] For April 25, 2010 through October 31, 2010, there are no records to indicate how many hours of overtime plaintiff worked each week; for this time period, the Court employed the same weekly estimate as for the NYLL overtime claim — or 9 hours per week. The Court then multiplied 9 hours by the approximate number of weeks in the period (27) and again by the 50-percent overtime rate ($10), yielding $2,430. For November 1, 2010 through March 31, 2012, plaintiff's actual hours per month while working for Creative have been recorded in the Hours Spreadsheet. Therefore, for this period, the Court took the monthly total and divided each month's total by 4, to determine a weekly average of overtime hours. The Court then multiplied the overtime average by the 50-percent overtime premium ($10) by four weeks, to yield that month's overtime wages.[15] Based on the calculations for November 1, 2010 through March 31, 2012

---

[14] Plaintiff does not seek and is not entitled to unpaid overtime under both statutes for the same period.

[15] For example, the Hours Spreadsheet indicates that plaintiff worked 227 hours in April 2011. The Court divided 227 by four weeks, to determine the weekly average, or 56.75 hours. Thus,

(continued...)

(when plaintiff's employment with Creative ceased), this Court awards plaintiff $11,000 in FLSA overtime damages against Creative and Prebreza. Thus, the total FLSA overtime owed by Creative and Prebreza for April 25, 2007 through March 31, 2012 is $13,430.

Because the Hours Spreadsheet shows plaintiff worked no overtime while employed with Royal from April 2012 through May 2012, plaintiff is not entitled to any FLSA overtime compensation from Royal.

### C. Common Law Contract Claim

According to the Hours Spreadsheet, plaintiff worked 5,276 hours during the period from January 1, 2010 through March 31, 2012. See Hours Spreadsheet. At the agreed-upon hourly rate of $20, plaintiff was entitled to $105,520 in compensation for his employment at Creative. The same document shows that, for that time period, plaintiff was paid $65,430.[16] Thus, defendants Prebreza and Creative owe plaintiff $40,090 in contractual damages.

For the time period from April 1, 2012 through May 31, 2012, plaintiff worked 130 hours at Royal, and was entitled to $2,600 in compensation for his performance. See Hours Spreadsheet. During this time period, he received $1,600, leaving $1,000 in unpaid wages.

---

[15](...continued)
during April 2011, plaintiff worked 16.75 hours of overtime per week. Those hours, when multiplied by the $10 overtime premium for each week, yield unpaid earned overtime compensation in the amount of $670 for April 2011.

[16] To calculate the amount paid by Creative, the Court added up all payments listed in the "Discharges" column of the Hours Spreadsheet through May 18, 2012. See Hours Spreadsheet. To be sure, this includes two payments made after plaintiff left Creative's employment on March 31, 2012 (a payment of $500 on April 13, 2012 and one of $3,600 on May 18, 2012). However, given the size of the payments and the fact that plaintiff did not work any hours in April and very few in May, the Court construes those payments as ones made on behalf of Creative, as opposed to Royal.

Therefore, Royal and Prebreza are jointly and severally liable for $1,000 in contract damages for this time period.

The foregoing calculations are summarized in the chart below.

### E. Total Unpaid Compensation Amounts

| Wage Type | Law | Time Period | Amount Owed | Defendants |
|---|---|---|---|---|
| **Unpaid Overtime Premiums** | **NYLL** | April 25, 2007 - December 18, 2008 | $6,385.50 | Creative & Prebreza |
| | | December 19, 2008 - April 25, 2010 | $6,300 | Creative & Prebreza |
| | | **Total for Creative & Prebreza:** | $12,685.50 | |
| | **FLSA** | April 25, 2010 – March 31, 2012 | $13,430 | Creative & Prebreza |
| | | **Total for Creative & Prebreza:** | $13,430 | |
| **Hours Worked at Agreed-Upon Rate** | **New York contract law** | January 1, 2010 - March 31, 2012 | $40,090 | Creative & Prebreza |
| | | April 1, 2012 – June 6, 2012 | $1,000 | Royal & Prebreza |
| | | **Total for Creative & Prebreza:** | $40,090 | |
| | | **Total for Royal & Prebreza:** | $1,000 | |

## IV.    Liquidated Damages

Plaintiff has requested liquidated damages under both the FLSA and the NYLL.  <u>See</u> Kumar Aff. ¶ 27; Pl. Mem. at 8.[17]

---

[17]  Plaintiff advances an alternative argument, i.e., for an award of prejudgment interest on his NYLL damages, in the event the Court declines to award liquidated damages under both statutes for the same time periods.  <u>See</u> Kumar Aff. ¶ 27 n.2.  For more on prejudgment

(continued…)

Under the FLSA, an employer who violates the overtime compensation requirements is liable for "an additional equal amount as liquidated damages" unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful. 29 U.S.C. §§ 216(b), 260. Obviously, as a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief. See Peralta, 2014 WL 988835, at *10. Therefore, the Court awards liquidated damages under the FLSA.

The current version of the NYLL also authorizes an award of liquidated damages to a prevailing plaintiff "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ." N.Y. Lab. Law § 663(1).[18] For the time period from April 25, 2007 through April 8, 2011, the liquidated damages under the NYLL are calculated at 25 percent of the unpaid wages due to a prevailing plaintiff. See Wicaksono, 2011 WL 2022644, at *6 n.2. For the time period from April 9, 2011 through May 2012, liquidated damages are calculated at 100 percent of unpaid wages. See N.Y. Lab. Law § 663(1).

District courts within this Circuit (and indeed within this District) are divided as to whether employees may obtain cumulative awards of liquidated damages under both the FLSA

---

[17](...continued)
interest, see discussion infra pp. 34-36.

[18] For the time period from April 25, 2007 through November 23, 2009, the NYLL authorized an award of liquidated damages "upon a finding that the employer's failure to pay the wage required . . . was willful[.]" See Gortat v. Capala Bros., 949 F.Supp.2d 374, 381 (E.D.N.Y. 2013) (quoting prior version of N.Y. Lab. Law § 663(1)); see also Compl. ¶ 46 (defendants violated NYLL "knowingly, willfully and in bad faith").

and the NYLL. Some decisions issued out of this District have awarded both types of damages for the same violations, reasoning that, because state case law characterizes the state liquidated damages as a "penalty," whereas federal case law characterizes FLSA liquidated damages as compensatory, the two awards serve different purposes. See Hernandez, 2013 WL 5129815, at *1, *5-6 (adopting unopposed report and recommendation awarding cumulative liquidated damages); Hernandez v. Punto y Coma Corp., No. 10-CV-3149 (NGG)(RML), 2013 WL 4875074, at *1, *8 (E.D.N.Y. Sept. 11, 2013) (same); see also Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997) ("Liquidated damages under the FLSA are considered compensatory rather than punitive in nature."). Other cases have found that distinction unpersuasive, in light of the similar predicates for an award of liquidated damages under each statute. See Gortat, 949 F.Supp.2d at 381 (Glasser, J., collecting cases) ("I find the distinction between compensatory and punitive for characterizing liquidated damages under the FLSA and NYLL as semantic, exalting form over substance, and also not persuasive."); see also Peralta, 2014 WL 988835, at *10-11; Guadalupe v. Tri-State Emp't, Mgmt. & Consulting, Inc., No. 10-cv-3840 (NG)(CLP), 2013 WL 4547242, at *14-15 (E.D.N.Y. Aug. 28, 2013).

As explained in the Peralta Report and Recommendation, see Peralta, 2014 WL 988835, at *11, this Court finds the latter view more persuasive: Both forms of damages seek to deter wage-and-hour violations in a manner calculated to compensate the party harmed. See Chun Jie Yin, 2008 WL 906736, at *7.[19] Having concluded that there is no meaningful

---

[19] Indeed, since the NYLL was recently amended to provide for 100 percent liquidated damages, see *supra* p. 32, "[t]o the extent that the federal and state statutes now provide for

(continued...)

distinction between the two forms of damages, see Peralta, 2014 WL 988835, at *11, the Court awards the greater of the two where both forms of damages are otherwise available for the same violation.

Based on the previously calculated amounts, see *supra* p. 31, the Court awards FLSA liquidated damages on plaintiff's overtime damages for the period starting with April 25, 2010, as they are the greater of the two forms of available damages. Under the FLSA, plaintiff is owed unpaid overtime compensation totaling $13,430.00. Therefore, applying 100 percent liquidated damages, the Court awards plaintiff a total of $13,430.00 in liquidated damages.

For the time period from April 25, 2007 through April 24, 2010, pursuant to the NYLL, plaintiff is entitled to $3,171.38 in liquidated damages, an amount equal to 25 percent of the $12,685.50 owed in outstanding overtime payments.

## V.     Prejudgment Interest

Having declined to award cumulative liquidated damages under both the FLSA and NYLL, the Court will now address plaintiff's alternative argument that he be awarded prejudgment interest on his NYLL damages pursuant to the New York Civil Practice Law and Rules (the "CPLR"). See Kumar Aff. ¶ 27 n.2. A prevailing plaintiff is entitled to prejudgment interest at a rate of nine percent per year for violations of the NYLL. See N.Y. C.P.L.R. §§ 5001, 5004; Smith v. Nagai, No. 10-cv-8237 (PAE) (JCF), 2012 WL 2421740,

---

[19](...continued)
essentially identical remedies with respect to liquidated damages, it is harder to argue that they are designed to compensate a plaintiff for disparate harms" under the amended state statute. Gunawan, 897 F.Supp.2d at 91 n.11; see Gortat, 949 F.Supp.2d at 381 n.3 (the recent amendments to the NYLL "bespeak[] an acknowledgment that the compensatory/punitive dichotomy is a semantic one").

at *4 (S.D.N.Y. May 15, 2012) ("[The] NYLL provides that a plaintiff is entitled to prejudgment interest at a rate of nine percent . . . .").[20] Prejudgment interest may be awarded on violations of the NYLL for which liquidated damages have also been ordered. See, e.g., Kalloo v. Unlimited Mech. Co. of NY, Inc., 977 F.Supp.2d 187, 204 (E.D.N.Y. Oct. 10, 2013); Gunawan, 897 F.Supp.2d at 92 ("[P]rejudgment interest may be applied to violations of the NYLL for which liquidated damages have already been provided under that statute.") (citations omitted). Plaintiff is also entitled to prejudgment interest on his breach of contract claim. See Koch v. Greenberg, — F.Supp.2d —, 2014 WL 1284492, at *28 (S.D.N.Y. Mar. 31, 2014) (prejudgment interest is "mandatory" for damages incurred as a result of breach of contract).[21]

An award of prejudgment interest is governed by sections 5001 and 5004 of the CPLR, and where, as here, "damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). The choice of the date from which to compute prejudgment interest is left to the discretion of the court. See Gunawan, 897 F.Supp.2d at 93 (citing Koylum, Inc. v. Peksen Realty Corp., 357 F.Supp.2d 593, 597 (E.D.N.Y. 2005)) ("A

---

[20]  Although not specifically requested by plaintiff, prejudgment interest will not be awarded on his FLSA claims: "'It is well settled that in an action for violations of the [FLSA,] prejudgment interest may not be awarded in addition to liquidated damages.'" Rodriguez, 2011 WL 4962397, at *6 (quoting Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988)); see also Gunawan, 897 F.Supp.2d at 92 ("[Plaintiff] is therefore entitled to an award of prejudgment interest only on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA were not assessed.") (internal quotations and citations omitted).

[21]  Plaintiff's memorandum of law is silent as to prejudgment interest on his breach of contract claim, but the Court assumes that this is due to the fact that he was pursuing the common law claim solely in the alternative. See supra discussion pp. 22-24.

court has discretion to choose a reasonable accrual date."); Rodriguez, 2011 WL 4962397, at *6 (quoting Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998)) ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation.").

Taking into account that plaintiff did not propose a prejudgment interest starting date in his damages calculations, and that the damages arose over a multi-year period, the Court, in exercising its discretion, awards prejudgment interest on the NYLL and breach of contract damages owed jointly and severally by Creative and Prebreza (i.e., $52,775.50), to be calculated from April 25, 2010. Similarly, the Court awards prejudgment interest on the NYLL and breach of contract damages owed jointly and severally by Royal and Prebreza (i.e., $1,000), to be calculated from May 1, 2012. These dates represent a reasonable midpoint of the dates of accrual of plaintiff's damages under New York law against the respective pairings of defendants. See Gunawan, 897 F.Supp.2d at 93 ("The median date between the earliest ascertainable date the cause of action existed and the date the action was filed is the one most commonly used [as the interest starting date].") (citations omitted).

## VII.    Admonishment of Plaintiff's Counsel

Finally, the Court is constrained to address the slipshod manner in which plaintiff's claims were prosecuted. To say that plaintiff's counsel performed inadequately would be an understatement. To be sure, the errors varied in degree. Some were minor, careless mistakes that were likely the result of utilizing template motion papers. See, e.g., Kumar Aff. ¶ 5 (claiming the action was commenced by a "First Amended Complaint"); Compl. at 1 (plaintiff

represented by "her" attorneys); id. ¶ 28 ("Plaintiff usually worked *seven (6)* days a week from 8 AM to 7 PM.") (emphasis added). Counsel's errors were not, however, limited to minor drafting mistakes. By way of example only, the Court's ability to adjudicate the legal and factual issues in this case was frustrated by internally inconsistent statements vis-à-vis plaintiff's motion for default judgment on the breach of contract claim, see discussion *supra* pp. 22-23, and counsel's failure to address the legal basis for holding Royal and Creative jointly liable as employers, see discussion *supra* p. 16.

Even more problematic than those errors, however, is counsel's initial withholding from the Court of plaintiff's employment records (the Hours Spreadsheet and the Time Cards), his disregard of those records in performing his damages calculations, and, until pressed by the Court, his insistence that such records did not exist. See Pl. Mem. at 2 (claiming "there are no records or other evidence that conflict with the averments made in Plaintiff's affidavit"); see also 6/20/14 Tr. at 31 (counsel admits he should have not used $20 as the pay rate for the entire period of damages, where the NYSDOL Complaint in his possession indicated otherwise).[22]

Finally, it should be noted that Kumar was admitted to the New York state bar the same year he filed a notice of appearance in this matter. See http://iapps.courts.state.ny.us/attorney/AttorneySearch (last visited Nov. 20, 2014). His inexperience likely accounts for his subpar performance. While the Court is frustrated with

---

[22] To put plaintiff's disregard of the available time records in perspective, without the data from those records, plaintiff's damages calculations totaled $418,713. See Motion Damages Chart at 2. When plaintiff incorporated that information, he reduced his damages calculation to $250,946. See 6/19/14 Damages Chart.

that performance, the Law Offices of William Cafaro shares much of the responsibility for the deficiencies in counsel's advocacy, as it is obvious that Kumar was inadequately supervised.[23] The Court expects that these lapses in supervision will not occur in the future, in this and other cases.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part plaintiff's motion for default judgment. Plaintiff has established liability under the FLSA and the NYLL with respect to unpaid overtime premiums, but not as to minimum-wage violations. The Court further concludes that the complaint does not sufficiently allege a claim for unpaid spread-of-hours compensation under the NYLL, but does sufficiently allege a breach of contract claim for unpaid wages under New York common law. As for damages, the Court finds that Prebreza and Creative are jointly and severally liable for $66,205.50 in damages — $52,775.50 of which is subject to prejudgment interest as of April 25, 2010. The Court concludes that Prebreza and Royal are jointly and severally liable for $1,000 in damages, the entirety of which is subject to prejudgment interest of as May 1, 2012.

The Clerk is requested to enter this Memorandum and Order into the Electronic Case

---

[23] Section 5.1 of the New York Code of Responsibility states, in relevant part:

> A law firm shall ensure that the work of partners and associates is adequately supervised, as appropriate. A lawyer with direct supervisory authority over another lawyer shall adequately supervise the work of the other lawyer, as appropriate. In either case, the degree of supervision required is that which is reasonable under the circumstances, taking into account facts such as the experience of the person whose work is being supervised, the amount of work involved in a particular matter, and the likelihood that ethical problems might arise in the course of working on the matter.

Filing system, to enter judgment consistent therewith, and to transmit copies via Federal

Express to:

> Creative Custom Cabinets Inc.
> 5847 201st Street
> Oakland Gardens, NY 11364
>
> Royal Contracting & Design Corp.
> 5847 201st Street
> Oakland Gardens, NY 11364
>
> Nino Prebreza
> 5847 201st Street
> Oakland Gardens, NY 11364
>
> Flag Prebreza
> 5847 201st Street
> Oakland Gardens, NY 11364

**SO ORDERED.**

**Dated:**   **Brooklyn, New York**
           **November 25, 2014**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**